THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **RENEE MCGHEE,** *et al.*, : | |
| : | |
| **Plaintiffs,** : | |
| : | Civil Action |
| v. : | No. 5:02-CV-371(CAR) |
| : | |
| **STATE OF GEORGIA,** *et al.*, : | |
| : | |
| **Defendants.** : | |
| : | |

*ORDER ON PLAINTIFF'S MOTION TO SET ASIDE JUDGMENT*

Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Plaintiff Renee McGhee has moved the Court to set aside the judgment entered in favor of Defendants on July 19, 2003, on the basis of newly discovered evidence and ineffective assistance of counsel. Prior to filing her Rule 60(b) motion, Plaintiff filed a notice of appeal to the United States Court of Appeals for the Eleventh Circuit. The Court of Appeals currently has jurisdiction over her case. Upon review of the record in the case, this Court finds that the relief Plaintiff requests is unwarranted and the judgment should not be set aside. The motion (Doc. 141) is therefore **DENIED**.

Rule 60(b) gives a district court discretion to relieve a party from a final judgment for various reasons, including "mistake, inadvertence, surprise, or excusable neglect," and "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." The Court's discretion is limited, however, by Plaintiff's pending appeal. Because the filing of a notice of appeal generally "deprives the district court of jurisdiction over all issues involved in the appeal," after notice of appeal is filed a district court has discretion

1

only to deny a Rule 60(b) motion, not to grant one.  Mahone v. Ray, 326 F.3d 1176, 1179 (11th Cir. 2003).  The Court must nevertheless entertain the merits of Plaintiff's motion, as the Eleventh Circuit has outlined:

> a district court presented with a Rule 60(b) motion after a notice of appeal has been filed should consider the motion and assess its merits. It may then deny the motion or indicate its belief that the arguments raised are meritorious. If the district court selects the latter course, the movant may then petition the court of appeals to remand the matter so as to confer jurisdiction on the district court to grant the motion.

Id.  The Court has considered and assessed Plaintiff's motion and finds that it lacks merit.  Plaintiff's "newly discovered evidence" is neither newly discovered nor significantly probative, and her claim of ineffective assistance of counsel is not a proper grounds for relief from judgment.

Plaintiff's "newly discovered evidence" consists of two reports from medical doctors which criticize the procedures or challenge the conclusions of the autopsy performed by Defendant Melissa Sims and two subsequent independent examiners.  Plaintiff contends that Dr. Sims falsified her autopsy results as part of a broad conspiracy by agents of the Georgia Department of Corrections, the Georgia Bureau of Investigation, the Bibb County Sheriff's Office, and the Bibb County Coroner's Office to cover up the alleged murder of Plaintiff's son, Steven Johnson.  As the Court has detailed in previous orders, Plaintiff alleges that two probation officers employed by the Georgia Department of Corrections beat her son to death and threw his body into the Ocmulgee River.  She contends that Defendant Sims, a medical examiner for the Georgia Bureau of Investigation, falsely reported that Steven Johnson's death was caused by drowning and that there was no evidence of trauma or beating.

Dr. Sims' conclusions were confirmed by two independent autopsies conducted at Plaintiff's direction.  Six months after the autopsy by Dr. Sims, Plaintiff had her son's body sent to Atlanta for

an autopsy by Dr. Brian Frist. Like Dr. Sims, Dr. Frist concluded that Mr. Johnson's death was caused by drowning and that there was no evidence of trauma. Unsatisfied with this conclusion, Plaintiff filed a complaint against Dr. Frist with the Georgia Composite State Board of Medical Examiners. In 2003, in the course of this litigation, Plaintiff had her son's body exhumed and sent to California for a third autopsy, this time by Dr. David Posey of the Glenoaks Pathology Medical Group, Inc. Dr. Posey also concluded that there was "no evidence of blunt force, sharp force, or ballistic trauma" and that the cause of death was "asphyxia due to drowning."

In connection with the present motion, Plaintiff has presented for the first time two reports from physicians who have reviewed the autopsy report of Dr. Sims and offer their criticisms of her procedures and conclusions. Dr. Joye Carter, of Memphis, Tennessee, represents herself as a board certified doctor of Anatomical, Clinical, and Forensic Pathology and as the former Chief Medical Examiner for Washington, D.C. Dr. Henry S. Johnson represents himself as a board certified internist with twenty-five years of practice in Los Angeles, California, specializing in the diagnosis and management of critically ill patients. Neither Dr. Carter nor Dr. Johnson performed an independent autopsy or had access to the body of Steven Johnson. Both based their reports only on their review of the various autopsy reports, the autopsy photographs, and statements or testimony from witnesses. Dr. Carter also states that she reviewed numerous newspaper articles.

These two reports cannot be characterized as newly discovered evidence. Courts in this circuit consider a five part test to determine whether newly discovered evidence warrants relief from judgment under Rule 60(b)(2):

> For the court to grant relief based upon newly discovered evidence under Rule 60(b)(2), a movant must meet a five-part test: (1) the evidence must be newly

>discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

Waddle v. Hendry County Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003). "A motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met." Id.

Neither Dr. Carter's nor Dr. Johnson's report meets the test. As to Dr. Carter's report, Plaintiff cannot show that it was newly discovered after the close of the case. Dr. Carter's report is dated June 7, 2005. Plaintiff's response to Defendants' motions for summary judgment was filed on June 8, 2005. The Court ruled on the motion on July 19, 2005. Thus, her report was available to Plaintiff in time to be presented to the Court during its review of the motion for summary judgment, and well before the Court issued its ruling. Although Dr. Johnson's report is dated August 5, 2005, nearly three weeks after judgment was entered, there is nothing to show that his report could not have been obtained earlier, in the exercise of due diligence. At the time the summary judgment motion was presented to the Court, this case had been pending for nearly three years. Plaintiff also had two years prior to the filing of the complaint to investigate the case. She had two independent autopsies conducted. She had ample time to obtain alternative expert opinions, and in fact did so. The fact that she had to search the nation to find a doctor who would give her the opinion she wanted does not warrant this Court's re-opening the case.

Newly discovered or not, the two reports offered by Plaintiff are not truly new evidence, but are merely cumulative and impeaching. Dr. Carter and Dr. Johnson offer only new opinions about old evidence. Their opinions are essentially armchair criticism of the autopsy report by Dr. Sims and of the investigative practices of the law enforcement officers. Dr. Carter presents no substantive

4

disagreement with Dr. Sims' results. She instead gives her opinion that a more thorough investigation should have been conducted. Dr. Johnson raises one substantive criticism, citing his concern that the weight of the lungs recorded by Dr. Sims might indicate that there was no water in Steven Johnson's lungs, and thus that he may have been dead before he entered the water. This criticism is not sufficiently probative to change the outcome of the Court's summary judgment order. Dr. Johnson's concern is based on his comparison of the recorded lung weights to the decedent's body mass index, with reference to a study of lung weights conducted at the University of Helsinki, Finland. He did not examine the lungs himself. His opinion contradicts the findings of three physicians who did have the opportunity to examine the body.

Plaintiff's motion emphasizes two other alleged inconsistencies in addition to Dr. Johnson's concern about the weight of the decedent's lungs. First, Plaintiff notes that Dr. Sims' autopsy report did not show the presence of any illegal drugs in the decedent's system, despite the testimony of Defendants Freeney and Stembridge that Plaintiff's son was initially arrested after testing positive for marijuana use. Second, Plaintiff notes that when the body was found, the decedent's hands were handcuffed in front of the body, in contrast to the testimony of Defendants Freeney and Stembridge that they handcuffed Steven Johnson with his hands behind his body. Both of these facts have been in the record of this case and have been central arguments for the Plaintiff from the very beginning. Both facts were presented to the jury in the original coroner's inquest on January 16, 2001.[1] They

---

[1]At the inquest, Dr. Sims testified that because of the decomposition of the decedent's body, she was unable to obtain blood and urine samples and had to conduct toxicology tests using a liver sample. She explained that the liver is not an "ideal substrate for toxicological testing," and that she was only able to test for alcohol, cocaine, and opioids.

A witness was also presented to demonstrate the ease with which a subject can move his hands from the back to the front while handcuffed. The witness was handcuffed behind his back with a pair of cuffs similar to the ones used on Mr. Johnson, and was able to move his hands to

were before this Court during the review of Defendants' motions for summary judgment. These facts at most create a mere suspicion and are not sufficiently probative to create a genuine issue of material fact as to Plaintiff's claims that the Defendants murdered her son and covered up his death.

In addition to her claims of newly-discovered evidence, Plaintiff contends that the representation provided by her attorneys in this case was "wilfully inadequate." Plaintiff has had a number of lawyers in this case. Prior to the commencement of litigation, it appears from the record that she was represented by Daryl Von Yokely of Atlanta. Her complaint was signed by Lucinda Perry of Douglasville, Georgia, Morris Fair and Mark Scott of Atlanta, and Jesse Young of Stone Mountain, Georgia. These four lawyers represented Plaintiff until the Court issued an order on Defendants' motions to dismiss, granting them in part and denying them in part. The substance of Plaintiff's claims survived the motions to dismiss, though some less meritorious legal theories were pruned away. Shortly after the Court issued its order on the motions, Plaintiff discharged Ms. Perry, Mr. Fair, Mr. Scott, and Mr. Young, and substituted Charles McKinney of Dayton, Ohio, and Ben Mills of Fitzgerald, Georgia. On December 22, 2004, just days after Defendants filed their motions for summary judgment, Mr. McKinney moved to withdraw, citing "irreconcilable differences" with his client "as to both procedural and substantive matters." Mr. Mills also moved to withdraw. The Court denied Mr. McKinney's motion to withdraw and granted him an extension of time to respond to the motions for summary judgment. On March 10, 2005, Mr. McKinney renewed his motion to withdraw, informing the Court that Plaintiff had terminated his representation. A hearing was held on April 20, 2005, at which the Court allowed Mr. McKinney to withdraw and gave Plaintiff an additional 30 days to respond to the motions for summary judgment that had been filed four months

---

the front of his body in a period of approximately one minute.

earlier. Marc Taylor of Atlanta subsequently entered an appearance on Plaintiff's behalf. On May 25, 2005, the Court granted a third extension of 21 days for Mr. Taylor to file a response to the motions for summary judgment. Mr. Taylor filed his response on June 8, 2005. The motions for summary judgment were granted on July 19, 2005, and judgment was entered in Defendants' favor.

Assuming for the sake of argument that the representation provided by these various lawyers was somehow ineffective, ineffective assistance of counsel is not an appropriate basis for relief under Rule 60(b). Plaintiff has no constitutional or statutory right to effective assistance of counsel in a civil case. Mekdeci v. Merrell Nat'l Laboratories, 711 F.2d 1510, 1522 (11th Cir. 1983). "'[A] party ... does not have any right to a new trial in a civil suit because of inadequate counsel, but has as its remedy a suit against the attorney for malpractice.'" Id. at 1523 (quoting Watson v. Moss, 619 F.2d 775, 776 (8th Cir.1981).

In any event, the Court cannot find that the representation provided by Plaintiffs' attorneys was "willfully inadequate." Many difficulties in this case were created by Plaintiff's inability to maintain a relationship with a single attorney. Still, her various attorneys successfully maneuvered her case through Defendants' motions to dismiss, participated in discovery, conducted depositions of witnesses, and ordered two independent autopsies of Steven Johnson's body. The Court was lenient, as well. After Mr. McKinney sought permission to withdraw, the Court gave Plaintiff nearly six months to find a new lawyer and file a response to the pending motions for summary judgment. Having already been through at least seven different lawyers, she failed to find substitute counsel until late May of 2005. Her final counsel's response appeared to be hastily drafted. Nevertheless, the Court conducted a thorough review of the record of evidence in this case, and found that there is simply no evidence in the record to support Plaintiff's claims, only a few vague suspicions and

7

a hearsay statement from a witness who has never been found or identified. This is not enough to sustain accusations as serious as those Plaintiff brings against these Defendants. In this case, Plaintiff's claims failed because they lacked merit, not because her lawyers failed to represent her. Plaintiff has failed to show good cause for this Court to revisit its judgment.

**SO ORDERED**, this 14th day of April, 2006.

                                       S/ C. Ashley Royal
                                       **C. ASHLEY ROYAL**
                                       **UNITED STATES DISTRICT JUDGE**

chw